**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable William J. Martínez**

Civil Action No. 11-cv-01288-WJM

JOSHUA J. VIGIL,

      Applicant,

v.

JOHN DAVIS, Warden, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

**ORDER DENYING 28 U.S.C. § 2254 APPLICATION**

---

Applicant, Joshua J. Vigil, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the Buena Vista, Colorado, Correctional Complex.  He filed *pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his convictions in Jefferson County, Colorado, district court case number 03CR812.  He paid the $5.00 filing fee.  ECF No. 1 is an example of the convention the Court will use throughout this order to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).

On May 24, 2011, Magistrate Judge Boyd N. Boland ordered Respondents to file within twenty-one days a pre-answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and/or exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  On June 10, 2011, Respondents filed their

pre-answer response (ECF No. 6).  On July 1, 2011, Mr. Vigil filed a reply (ECF No. 7) to the pre-answer response.

On September 1, 2011, the Court dismissed the case in part by dismissing claim four as procedurally barred.  The Court further ordered Respondents to file an answer within thirty days that addressed the merits of exhausted claims one, two, three, five, six, seven, eight, nine, ten, eleven, twelve, and thirteen.  These claims remain pending. After the Court granted extensions of time, the state court record was filed on October 4, 2011, and Respondents' answer (ECF No. 20) was filed on October 18, 2011.  Mr. Vigil did not file a reply, although he was given the opportunity to do so.

In considering Mr. Vigil's filings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* litigant retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  For the reasons stated below, the Court will dismiss pending claims

2

one, two, three, five, six, seven, eight, nine, ten, eleven, twelve, and thirteen, and deny

the application.

## I.  Factual and Procedural Background

On March 2, 2004, Mr. Vigil was convicted by a jury in Jefferson County District

Court Case No. 03CR812 on charges of second-degree murder, two counts of second-

degree assault, kidnapping, and tampering with physical evidence, for the stabbing

death of his cousin, Monica Gutierrez, and the assault of her boyfriend, Paul Vigil.  *See*

ECF No. 6 (pre-answer response), ex. B (Mr. Vigil's opening brief) at 10; ex. D (*People*

*v. Vigil*, No. 04CA0971 (Colo. Ct. App. Sept. 20, 2007) (not published) at 3.  Paul Vigil

will be referred to throughout this order by his full name because his surname is the

same as Applicant's.

On April 16, 2004, Mr. Vigil was sentenced to a total of forty years in the DOC.

*See* ECF No. 6, ex. C (answer brief) at 10.  On September 20, 2007, the Colorado

Court of Appeals affirmed on direct appeal.  *See* ECF No. 6, ex. D.  On March 10, 2008,

the Colorado Supreme Court denied certiorari review.  *See* ECF No. 6 ex. F.

On July 7, 2008, Mr. Vigil filed a motion for reconsideration of sentence pursuant

to Rule 35(b) of the Colorado Rules of Criminal Procedure, which the trial court denied

on July 21, 2008.  *See* ECF No. 6, ex. A (state court register of actions) at 14.

On March 5, 2009, Mr. Vigil filed a postconviction motion pursuant to Colo. R.

Crim. P. 35(c) alleging ineffective assistance of counsel, which the trial court denied on

March 10, 2009.  *See* ECF No. 6, ex. A at 13; ex. J (*People v. Vigil*, No. 09CA0622

(Colo. Ct. App. Jan. 13, 2011) (not published) at 3.  On January 13, 2011, the Colorado

Court of Appeals affirmed.  *See* pre-answer response, ex. J.  On April 18, 2011, the

3

Colorado Supreme Court denied certiorari review.  *See* ECF No. 6, ex. L.

On May 16, 2011, Mr. Vigil filed his application for writ of habeas corpus with this Court, which dismissed the application in part on September 1, 2011.  In the September 1 partial dismissal order, the Court noted that Respondents conceded the application was timely, dismissed claim four as procedurally barred, and drew the remaining exhausted claims for further proceedings.

## II.  Analysis

## A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see also Early v. Packer*, 537 U.S. 3, 8 (2002).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Harrington*, 131 S. Ct. at 784.  Furthermore,

4

"[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore,

clearly established law consists of Supreme Court holdings

5

> in cases where the facts are at least closely-related or
> similar to the case sub judice. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law. *See*

*Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this

analysis, the Court "must determine what arguments or theories supported or . . . could

have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court."  *Id*.  In addition, "review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Harrington*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean

the state court's contrary conclusion was unreasonable").

As a condition for obtaining habeas corpus from a federal

> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Harrington*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. §

2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section

2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state

court decision was based on an unreasonable determination of the facts in light of the

evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must

presume that the state court's factual determinations are correct and Applicant bears

the burden of rebutting the presumption by clear and convincing evidence. "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-*

*El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law."

*Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural

defect in the trial that defies harmless-error analysis, [the Court] must apply the

harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see*

*also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must

conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a

state court proceeding regardless of whether the state court found error or conducted

harmless error review). Under *Brecht*, a constitutional error does not warrant habeas

relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court make this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. Claims

The Court now will address the merits of Mr. Vigil's exhausted, and remaining, claims:

> 1.    Trial counsel provided him with ineffective assistance because he did not "independently test any of the key evidence or consult with a forensic expert." ECF No. 1 (application) at 8.

> 2.    Trial counsel provided him with ineffective assistance because he did not consult an expert to determine whether some of the bruises on Monica Gutierrez's body were inflicted by Paul Vigil.

> 3.    Trial counsel provided him with ineffective assistance because he did not retain a forensic expert to assess whether Paul Vigil's injuries constituted serious bodily injury or whether the soles of Mr. Vigil's shoes matched the imprints on Paul Vigil's body.

5.     Trial counsel and appellate counsel provided him with ineffective assistance "when the errors are considered cumulatively." *Id.* at 12.

6.     "The trial court violated Mr. Vigil's federal and state constitutional rights to confront witnesses, to present a defense and to a fair trial" by disallowing evidence of a fight Mr. Vigil had witnessed about seven years before the murder between Monica Gutierrez and her brother. *Id.* at 12.

7.     The trial court denied Mr. Vigil his right to confrontation when it "did not allow the defense to effectively cross-examine Augustine Garcia, the informant, or Paul Vigil, the alternate suspect." *Id.* at 13.

8.     The trial court denied Mr. Vigil his "right to confrontation when it refused to enforce its own order regarding discovery of impeachment information on Augustine Garcia, the informant." *Id.* at 13.

9.     The trial court denied Mr. Vigil his "constitutional rights to present a defense and to confront witnesses against him" by disallowing evidence that Augustine Garcia "was armed with a weapon in an aggravated robbery for which he was convicted." *Id.* at 14.

10.     The trial court did not allow the defense to cross-examine Paul Vigil effectively by disallowing evidence that Paul Vigil had previously injured Monica Gutierrez.

11.     The trial court did not allow the defense to introduce evidence that Paul Vigil had caused serious bodily injury to Monica Gutierrez in the past.

12.     The trial court denied Mr. Vigil his right to confront Paul Vigil and impeach him by precluding Mr. Vigil from presenting evidence that Paul Vigil had injured Monica Gutierrez in the past "[e]ven after Paul Vigil opened the door by testifying that he would never hurt Monica Gutierrez." *Id.* at 16.

13. Mr. Vigil "was denied his right to a fair trial because of . . . numerous irregularities," i.e., the prosecutor showed the jury a photograph of his tattoo, which the trial court had ruled could be used only for identification purposes, and witness Jessie Hurtado testified that she had taken a lie detector test. *Id.* at 16.

## Claims One, Two, and Three

Mr. Vigil's first three claims involve allegations of ineffective assistance of trial counsel. Specifically, he alleges that trial counsel provided him with ineffective assistance because counsel did not (1) independently test any of the key evidence or consult with a forensic expert, (2) consult an expert to determine whether some of the bruises on Monica Gutierrez's body were inflicted by Paul Vigil, and (3) retain a forensic expert to assess whether Paul Vigil's injuries constituted serious bodily injury or whether the soles of Mr. Vigil's shoes matched the imprints on Paul Vigil's body.

It was clearly established when Mr. Vigil was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Mr. Vigil must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Vigil's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it

11

must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Vigil must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  In determining whether Mr. Vigil has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698.  Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Vigil fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697.  The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000).

The *Strickland* two-part test also applies in the context of cases in which a defendant entered a guilty plea, which is not the case here.  Therefore, two recent and factually distinguishable decisions by the Supreme Court discussing the Sixth Amendment right to counsel during the plea-bargaining process do not alter the Court's analysis. *See Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 132 S. Ct. 1399 (2012)

Mr. Vigil's first claim repeats a portion of the claim he raised in his opening brief on appeal from the denial of his Colo. R. Crim. P. 35(c) postconviction motion. *See*

12

ECF No. 6, ex. G at 23-26.  Pages 23-25 of the opening brief appear to be a general

introduction preceding three claims concerning specific experts Mr. Vigil argued counsel

should have consulted.  Respondents have treated claim one as a general allegation of

ineffective assistance based upon counsel's failure to consult with any of the experts

Mr. Vigil mentioned his opening brief.  Mr. Vigil has not challenged this characterization.

The Colorado Court of Appeals rejected Mr. Vigil's claim one argument when it

found that Mr. Vigil failed to show that he was prejudiced by counsel's "failure" to hire

any of the experts he claimed should have been consulted.  *See* ECF No. 6, ex. J at 4-

8.  The state appeals court specifically found that, even assuming the experts Mr. Vigil

suggested would have reached the conclusions he contends they would have, such

information would not have been exculpatory because it (1) related to forensic matters

not disputed at trial, and (2) did not disprove the evidence against him, which consisted

of eyewitness testimony.  *Id.*

In claims two and three, Mr. Vigil specifically argues that his trial counsel

provided ineffective assistance by failing to present experts who would testify that the

bruises on Monica Gutierrez's body were inflicted by Paul Vigil, and not Applicant (claim

two), and Paul Vigil's injuries were not consistent with the shoes worn by Mr. Vigil (claim

three).

The Colorado Court of Appeals again determined that, even assuming Mr. Vigil

could provide deficient performance by his counsel, he could not establish prejudice.  *Id.*

at 5-6.  As to claim two, the state appeals court reasoned that, because it was

undisputed at trial that Paul Vigil and the victim physically were fighting on the night of

the murder, the question of whether Applicant assaulted the victim turned on eyewitness

13

testimony that Mr. Vigil, in the words of the state appeals court, "straddled the victim and repeatedly punched her face and smashed her head against the hardwood floor," and then "retrieved a kitchen knife and stabbed her in the neck." *Id.*  The state appeals court concluded that the expert testimony suggested by Mr. Vigil "would not have eliminated defendant as the cause of the injuries that led to [the victim's] death." *Id.* at 6.

As to claim three that Paul Vigil's injuries were inconsistent with the shoes worn by Mr. Vigil, the state appeals court pointed out it was undisputed that Mr. Vigil's co-defendant, Matias Dominguez, was the primary aggressor in the beating of Paul Vigil, and Mr. Vigil only played a small role in that assault. *Id.* at 7-8; *see also* R. vol. XVI, 85-90, Feb. 25, 2004.  As a result, the Colorado Court of Appeals found that "[a]n examination of the tread marks reflected in [Paul Vigil's] injuries would have shown only what was already undisputed, and would not have had any tendency to demonstrate that defendant did not assault [Paul Vigil]." *See* ECF No. 6, ex. J at 8.  The state appeals court found that Mr. Vigil failed to demonstrate how counsel's alleged ineffectiveness prejudiced Applicant's defense as to claims one, two, and three.  The Colorado Court of Appeals' finding that Mr. Vigil failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, is not contrary to or an unreasonable application of federal law.  Claim one, two, and three are without merit.

### Claim Five

In his fifth claim, Mr. Vigil alleges that his trial and appellate attorneys were ineffective when their errors are considered cumulatively.  He argues that, even if the

allegedly deficient performance of his trial and appellate attorneys did not individually create sufficient prejudice to warrant reversal, their combined errors constitute sufficient prejudice to require it.

First, the Court notes that the Supreme Court has not directly addressed the applicability of the cumulative-error doctrine in the context of an ineffective-assistance-of-counsel claim. *See Forrest v. Florida Dep't of Corrections*, 342 F. App'x 560, 564-65 (11th Cir. 2009) (*citing United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) ("[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."); *Lorraine V. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."); *see also Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003) (finding it unnecessary to address the issue of cumulative error as a separate constitutional ground for granting habeas relief).

The United States Court of Appeals for the Tenth Circuit (Tenth Circuit) has addressed a cumulative-error claim in a § 2254 habeas corpus proceeding, and found that cumulative-error review was not restricted by § 2254(d)(1)'s limited focus on whether a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law when there was no antecedent state court decision on the same issue. *See Cargle v. Mullins*, 317 F.3d 1196, 1206 (10th Cir. 2003). Lacking such a decision, the Tenth Circuit in *Cargle* approached the question of cumulative error as it would have prior to § 2254(d)'s passage, and determined that a cumulative-error analysis aggregates all errors that individually have been found to be harmless, and

15

therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.  *Id.* at 1206; *see also Welch v. Sirmons*, 451 F.3d 675, 710 (10th Cir. 2006) (same). However, "to deny cumulative-error consideration of claims unless they have first satisfied their individual substantive standards for actionable prejudice would render the cumulative error inquiry meaningless, since it [would] . . . be predicated only upon individual error already requiring reversal").  *Cargle*, 317 F.3d at 1207 (internal quotation marks and citation omitted); *see also Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) ("[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

The Colorado Court of Appeals did not address Mr. Vigil's fifth claim separately on postconviction review, apparently because the state appeals court held that Mr. Vigil failed to demonstrate prejudice resulting from the allegedly deficient performance of trial counsel, *see* ECF No. 6, ex. J at 4-8, and failed to present properly his claim alleging ineffective assistance of appellate counsel.  *Id.* at 8-9.

As previously stated, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington*, 131 S. Ct. at 784-85.  To be entitled to relief under circumstances when a state court decision is unaccompanied by an explanation, a habeas applicant must demonstrate that "there was no reasonable basis for the state court to deny relief," *id.* at 784, because the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox*, 196 F.3d at

16

1177.  Mr. Vigil is unable to make such a showing.

The Colorado Court of Appeals determined that, even assuming deficient performance by trial counsel for failing to retain certain experts, Mr. Vigil was not prejudiced because the information he claims would have been acquired did not refute the evidence against him.  *See* ECF No. 6, ex. J at 4-8.  Earlier in this order in the discussion of claims one, two, and three, the Court found the state appeals court's determination to be a reasonable application of federal law.  *See Strickland*, 466 U.S. at 694.  Although there was no antecedent state court decision denying cumulative error of counsel based upon claims one, two, and three, these claims did not satisfy their individual standards for actionable prejudice and, therefore, do not in combination satisfy a cumulative-error claim.

The Colorado Court of Appeals declined to consider Mr. Vigil's claim that his appellate attorney was ineffective because Mr. Vigil failed to comply with a state procedural rule.  *See* ECF No. 6, ex. J at 8-9.  This Court dismissed the claim of ineffective assistance of appellate counsel on September 1 as procedurally barred.  *See* ECF No. 10 at 7-10.  To revisit that dismissed claim by itself, under Mr. Vigil's claim that his appellate attorney was ineffective when his errors are considered cumulatively, would circumvent the procedural-default doctrine and the cumulative-error doctrine. Based on the analysis set forth above, the Colorado Court of Appeals' conclusions were not contrary to or an unreasonable application of federal law.  Claim five is meritless.

### Claim Six

Mr. Vigil contends he was denied the rights to confront witnesses, to present a

17

defense, and to a fair trial.  His contention is based upon the trial court's ruling declining

to allow him to present evidence that, approximately seven or eight years before the

crime, the victim, Monica Gutierrez, fought with her brother over a headset and injured

her brother and mother, who tried to intervene.  *See* ECF No. 6, ex. B (appellant's

opening brief) at 28-30.  Mr. Vigil apparently argues such evidence might have

convinced the jury that the victim was a violent person and, therefore, he acted in

reasonable self-defense when he stabbed her in the neck.

For a federal court to grant habeas relief based on state court evidentiary rulings,

the rulings must "render the trial so fundamentally unfair as to constitute a denial of

federal constitutional rights."  *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979).  For a

state court's evidentiary decision to violate a defendant's due process right, it must

"offend[] some principle of justice so rooted in the traditions and conscience of our

people as to be ranked as fundamental."  *Montana v. Egelhoff*, 518 U.S. 37, 58 (1996)

(quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977) (internal quotation marks

omitted); *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).  Evidentiary

rulings do not violate the Constitution unless the prejudicial effect of the evidence so

outweighs its probative value as to deny the defendant due process of law.  *Hopkinson*

*v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989).

A defendant's right to present evidence is not absolute.  It yields to "familiar and

unquestionably constitutional evidentiary rules."  *Egelhoff*, 518 U.S. at 42.  One such

rule is Federal (and Colorado) Rule of Evidence 403, which provides for the exclusion of

evidence whose "probative value is substantially outweighed" by the danger of unfair

prejudice it carries.  *Egelhoff*, 518 U.S. at 42.  A criminal defendant has been denied

fundamental fairness when the excluded evidence was critical to his defense.  *Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002).  To determine whether evidence is critical, a federal court must consider the materiality of the excluded evidence to the presentation of the defense.  *Richmond*, 122 F.3d at 872.  "Evidence is material if its suppression might have affected the trial's outcome."  *Id.*

The Colorado Court of Appeals rejected Mr. Vigil's argument that the trial court erred in not allowing him to introduce evidence that the victim had been involved in a fight with her brother and mother approximately seven or eight years earlier.  The state appeals court reasoned as follows:

> Trial courts are accorded considerable discretion in deciding questions concerning the admissibility of evidence and have broad discretion in determining the relevance of evidence, it probative value, and its prejudicial impact. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993).  Thus, absent an abuse of discretion, a court's evidentiary rulings will be affirmed.  *Id.*  To show an abuse of discretion, a defendant must establish that the decision to exclude the evidence was manifestly arbitrary, unreasonable, or unfair. *Id.*
>
> . . . .
>
> Here, to present his defense of self-defense, defendant intended to introduce evidence of the general character of the victim for violence, as well as her credibility, through the testimony of the victim's father regarding an altercation over a headset in a camper van that allegedly occurred between the victim and other family members approximately seven or eight years earlier.
>
> Under CRE 608, extrinsic evidence regarding the specific instance of the victim's prior violent act would not be admissible to attack the credibility of her statements.  This evidence is therefore inadmissible to attack the credibility of the victim as a hearsay declarant under CRE 806.

Evidence of the victim's character for violence is legally relevant to the issue of self-defense because the inference that the victim was the initial aggressor is made more probable with the evidence than without it. *See People v. Jones*, 675 P.2d 9, 16 (Colo. 1984); *see also* CRE 401, 404(a)(2). However, a defendant is entitled to present evidence of a prior violent act of a victim only if (1) the defendant contends that he or she acted in self-defense and there is competent evidence to support this contention, (2) either the act occurred or the defendant initially became aware of its occurrence within a reasonable time of the homicide, and (3) the defendant knew of the victim's prior violence at the time of the homicide. *People v. Ferrell*, 200 Colo. 128, 130 613 P.2d 324, 326 (1980). The function of the remoteness test is to provide guidance to the trial court in determining whether a specific act of violence by the victim could have created present apprehension or fear sufficient to justify the force used in the mind of a reasonable person." *People v. Burress*, 183 Colo. 146, 153, 515 P.2d 460, 464 (1973).

Here, the trial court found that defendant was present at the time of the earlier incident, and thus knew of it, but the incident occurred seven to eight years prior to the victim's death. In excluding the evidence, the trial court considered its remoteness in time and was not persuaded that an argument between teenaged siblings was "probative as to an incident eight years later as to whether or not [the victim] was the initial aggressor or would support the defendant's self-defense theory here."

The court properly determined that the incident was not probative because it occurred approximately seven or eight years prior to the death of the victim. Defendant was present at that time and thus learned of the incident several years before the death of the victim. Consequently, the incident was too remote in time to create present apprehension or fear in defendant sufficient to justify the force used. *See id.*

ECF No. 6, ex. D at 4-7.

Here, the state trial court did not exclude evidence critical to Mr. Vigil's defense.

The underlying ruling at issue is the trial court's decision to disallow evidence that the

20

murder victim, seven to eight years before the murder, had a physical fight with family members over whether she or her brother was entitled to use a headset.  For this ruling to represent a constitutional violation, the ruling would have to have precluded evidence so critical to Mr. Vigil's defense that its omission denied him due process of law.  *See Hopkinson*, 866 F.2d at 1197.  In addition, the state appellate court's failure to find a due process violation would have to be contrary to or an unreasonable application of clearly established Supreme Court law.  *See* 28 U.S.C. § 2254(d)(1).

Claim six falls short of this standard.  The evidentiary ruling here did not preclude the admission of critical evidence that might have affected the outcome of the trial. Whether the victim, as a teenager, physically fought with her brother had little, if any, likelihood to render Mr. Vigil's stabbing of her as reasonable.  Although the Colorado Court of Appeals' opinion did not cite to or base its conclusion on federal constitutional law, the decision must be viewed with deference.  *See Harrington*, 131 S. Ct. at 784, *Early*, 537 U.S. at 8; *Aycox*, 196 F.3d at 1177-78.  The state appellate court's conclusion was not contrary to federal constitutional law.  The sixth claim is meritless.

### Claims Seven, Eight, and Nine

Mr. Vigil asserts three claims – claims seven through nine – concerning the alleged denial of his rights to confrontation and cross-examination.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. CONST. amend. VI.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted).  The constitutionally protected right of

cross-examination includes exposure of a witness' motivation in testifying.  *Id.* at 316-17.  However, the Confrontation Clause does not prevent the trial court from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Trial judges have wide discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.*; *see also Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *Saiz v. Ortiz*, 392 F.3d 1166, 1182 (10th Cir. 2004).  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).  However, a trial court may violate a defendant's confrontation rights by prohibiting all inquiry into an event that "a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony."  *Van Arsdall*, 475 U.S. at 679.

As his seventh claim, Mr. Vigil alleges contends the trial court denied his right to confrontation when it "did not allow the defense to effectively cross-examine Augustine Garcia, the informant, or Paul Vigil, the alternate suspect."  ECF No. 1 at 13.  Claim seven serves as an introduction to claims eight and nine, and will be addressed through the discussion of these claims.  As previously stated, in claim eight, Mr. Vigil alleges the trial court denied his "right to confrontation when it refused to enforce its own order regarding discovery of impeachment information on Augustine Garcia, the informant." *Id.*  In claim nine, Mr. Vigil asserts the trial court denied his "constitutional rights to

present a defense and to confront witnesses against him" by disallowing evidence that Augustine Garcia "was armed with a weapon in an aggravated robbery for which he was convicted." *Id.* at 14.

The Court first will discuss Mr. Vigil's assertions in claim eight concerning Augustine Garcia. Augustine Garcia was the jail informant called by the prosecution to testify that Mr. Vigil had approached him and asked him to "assist him with taking out a witness on his case." R. vol. XVII, 13, Feb. 26, 2004. Augustine Garcia testified that Mr. Vigil referred to the "witness" as his *primo*, or cousin. *Id.* This evidence was introduced as evidence of Mr. Vigil's guilt.

The defense requested, and the trial court ordered, the prosecution to provide the defense with information about the Jefferson County cases in which Augustine Garcia had been an informant and cases from other jurisdictions the prosecution knew about in which he also had been an informant. R. vol. VII, 39-41, Dec. 29, 2003. The trial court specifically stated that the prosecution was not required "to do independent investigations in other jurisdictions to determine whether or not [Augustine] Garcia has had some role as an informant." *Id.* at 41-42. The prosecution only provided cases regarding Augustine Garcia in Jefferson County. R. vol. VIII, 7-9, Jan. 14, 2004. The trial court found that the information the prosecution turned over to the defense was in compliance with its order. *Id.* at 9.

During both direct and cross-examination, Augustine Garcia discussed the other cases in which he had been an informant and why he had informed on these other defendants. R. vol. XVII, 29-31, 43-49, Feb. 26, 2004. He also said the prosecution did not offer him anything in exchange for his testimony in this case. *Id.* at 37-38. The

23

defense had opportunities to use the other cases in which Augustine Garcia had been an informant to attack his credibility and establish any motive or bias he might have had.

As to Mr. Vigil's claim nine assertions, the trial court also allowed Augustine Garcia to present evidence of his robbery conviction.  Specifically, the trial court ruled that evidence of the robbery conviction could be elicited, including that Augustine Garcia "allegedly had a gun."  R. vol. XV, 175, Feb. 17, 2004.  On cross-examination, Augustine Garcia acknowledged he had been convicted of robbery, and when asked whether he had used a gun during the robbery, he replied, "No.  It –," and defense counsel asked him another question, thus changing the subject.  R. vol. XVII, 42, Feb. 26, 2004.  Therefore, the defense was able to use Augustine Garcia's robbery conviction to attack his credibility.

The Colorado Court of Appeals addressed Mr. Vigil's confrontation claims as to Augustine Garcia on direct appeal as follows:

II.  Impeachment

Defendant next contends that the trial court erred when it did not allow him to effectively cross-examine a witness who acted as an informant.  We disagree.

A.

Defendant argues that the trial court did not enforce its order to the prosecution to provide information regarding the witness's informant testimony in other cases.  We reject this argument.

The right of a defendant in a criminal proceeding to confront adverse witnesses is a fundamental constitutional protection.  *People v. Gholston*, 26 P.3d 1, 8 (Colo. App. 2000).  It is constitutional error to limit excessively the

defendant's cross-examination concerning a witness's credibility, bias, prejudice, or motive for testifying. *Id.* Within broad limits, any evidence tending to show bias or prejudice or to shed light on the inclinations of witnesses may be permitted. *People v. Villalobos*, 159 P.3d 624, 630 (Colo. App. 2006). However, the right to cross-examination is not unlimited, and the "trial court has wide latitude to place reasonable limits on cross-examination based on . . . such factors as harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that would be repetitive or only marginally relevant." *People v. Gholston*, 26 P.3d at 8. Absent an abuse of discretion, a trial court's decision concerning the scope of cross-examination will not be disturbed. *People v. James*, 40 P.3d 36, 43 (Colo. App. 2001).

In its motions hearing on December 29, 2003, the trial court ordered the prosecution: "[I]f you know of [the witness's] involvement in other jurisdictions . . . I think you have to disclose that. But I'm not going to require the People to do independent investigations in other jurisdictions to determine whether or not [the witness] has had some role as an informant." Contrary to defendant's assertion, the trial court specifically limited what the prosecution was required to provide, and the order did not include all such testimony in other cases.

At the motions hearing on January 14, 2004, the trial court also ordered the prosecution to provide information about a charge against the witness in a forgery case and his conviction for robbery in Jefferson County, as well as his possible involvement as an informant in other instances. The witness testified at trial, and to impeach his credibility defendant cross-examined him regarding several convictions and instances of his acting as an informant.

Because the trial court required the prosecution to disclose substantial information regarding the witness's past conviction and activities as an informant, the court did not abuse its discretion in limiting the disclosure to information of which the prosecution had knowledge.

Therefore, the court's order was not violated.

B.

25

> Defendant also contends that the trial court prevented him from questioning the witness regarding his use of a gun during the commission of a crime for which he was convicted.  The record does not support this contention.
>
> Contrary to his argument, the trial court allowed defendant to cross-examine the witness regarding the use of a weapon during the commission of a crime.  The record reflects that defense counsel asked the witness, "When you were committing the offense, you used a firearm, a handgun, didn't you?"  The witness responded, "No.  It - - " and was interrupted by counsel's next question.  Thus, the trial court did not prevent defendant from effectively impeaching the witness on this matter.

ECF No. 6, ex. D at 7-10.

Clearly, the trial court allowed the defense the opportunity to cross-examine Augustine Garcia, both concerning activities as an informant and concerning his past robbery conviction, despite limiting the disclosure to informant information of which the prosecution had knowledge.  *See Van Arsdall*, 475 U.S. at 679.  Although the Colorado Court of Appeals' opinion did not cite to or base its conclusion on federal constitutional law, the decision must be viewed with deference.  *See Harrington*, 131 S. Ct. at 784, *Early*, 537 U.S. at 8; *Aycox*, 196 F.3d at 1177-78.  The state appellate court's conclusions as to Augustine Garcia were not contrary to federal constitutional law.  *See Davis*, 415 U.S. at 315-16.  In addition, the state appeals court based its findings as to Mr. Vigil's ninth claim on portions of the trial transcript quoted verbatim.  Therefore, Mr. Vigil's argument also fails as to claim nine because the state court findings were not based on an unreasonable determination of the facts in light of the evidence presented to the state court.  *See* 28 U.S.C. § 2254(d)(2).  Claims seven, eight, and nine will be dismissed as without merit.

**Claims Ten, Eleven, and Twelve**

The Court next will address Mr. Vigil's allegations in claims ten, eleven, and twelve concerning Paul Vigil.  In claim ten Mr. Vigil contends the trial court did not allow the defense to cross-examine Paul Vigil effectively by disallowing evidence that Paul Vigil previously had injured Monica Gutierrez.  In claim eleven he argues that the trial court did not allow the defense to introduce evidence that Paul Vigil had caused serious bodily injury to Monica Gutierrez in the past.  Finally, in claim twelve, Mr. Vigil maintains the trial court denied his right to confront Paul Vigil and impeach him by precluding Mr. Vigil from presenting evidence that Paul Vigil had injured Monica Gutierrez in the past "[e]ven after Paul Vigil opened the door by testifying that he would never hurt Monica Gutierrez."  *Id.* at 16.

As set forth in greater detail in the discussion of claim six above, for a federal court to grant habeas relief based on state court evidentiary rulings, the rulings must "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  *Brinlee*, 608 F.2d at 850.  For a state court's evidentiary decision to violate a defendant's due process right, it must "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Egelhoff*, 518 U.S. at 47.  Evidentiary rulings do not violate the Constitution unless the prejudicial effect of the evidence so outweighs its probative value as to deny the defendant due process of law.  *Hopkinson*, 866 F.2d at 1197.

A defendant's right to present evidence yields to "familiar and unquestionably constitutional evidentiary rules," which provide for the exclusion of evidence whose "probative value is substantially outweighed" by the danger of unfair prejudice it carries.

27

*Egelhoff*, 518 U.S. at 42.  A criminal defendant has been denied fundamental fairness when the excluded evidence was critical to his defense.  *Ellis*, 326 F.3d at 1128.  To determine whether evidence is critical, a federal court must consider the materiality of the excluded evidence to the presentation of the defense.  *Richmond*, 122 F.3d at 872.  "Evidence is material if its suppression might have affected the trial's outcome."  *Id.*

Paul Vigil was Monica Gutierrez's boyfriend, who allegedly had injured the victim on two prior occasions.  The defense sought to introduce evidence of two alleged altercations between Paul Vigil and Monica Gutierrez to support its theory that Paul Vigil had stabbed Monica Gutierrez.  The incidents involved alleged two acts of domestic violence, one during which Paul Vigil pushed Monica Gutierrez into a store window and the other during which the couple fought, resulting in Monica Gutierrez sustaining a black eye and broken ankle.  The trial court ruled the two prior incidents were inadmissible.  Specifically, the trial court found it had insufficient proof that the acts actually took place, since they were based on hearsay.  R. vol. XI, 311-312, Feb. 18, 2004.  In addition, the trial court found evidence that Mr. Vigil and Monica Gutierrez had fought in the past lacked probative value, since it was undisputed that Paul Vigil was present when the victim was stabbed and that they fought immediately preceding the victim's stabbing.  *Id.* at 311.

Lastly, the trial court rejected Mr. Vigil's argument that Paul Vigil "opened the door" to his prior acts of domestic violence against the victim by agreeing that, when interviewed by the police, he said he "would never hurt" the victim.  ECF No. 6, ex. 4 at 10; R. vol. XII, 157, Feb. 19, 2004.  The trial court found that Paul Vigil's statement did not directly state he would never hurt the victim, but rather merely recounted what he

told the police.  R. vol. XII, 177-178.  Therefore, such a statement did not require that

Mr. Vigil be permitted to impeach Paul Vigil with extrinsic evidence regarding the

comment.

The Colorado Court of Appeals affirmed, finding that the trial court did not abuse

its discretion, and addressed Mr. Vigil's claims as to Paul Vigil on direct appeal as

follows:

> Defendant further contends that the trial court did not allow him to cross-examine the victim's boyfriend (the alleged alternate suspect) effectively.  He argues that he was not allowed to present evidence that the boyfriend had injured the victim on two prior occasions and to impeach his statement when he "opened the door" by testifying that he would never hurt the victim.  We reject this contention.
>
> The trial court has substantial discretion when determining the admissibility of other crime evidence, and its decision will not be overturned absent an abuse of that discretion.  *People v. Groves*, 854 P.2d 1310, 1314 (Colo. App. 1992).  A defendant may prove his or her innocence by establishing the guilt of another, including by proof of similar offenses committed by that person.  *People v. Trusty*, 53 P.3d 668, 674 (Colo. App. 2001).  The decision to admit such evidence is made on a case-by-case basis.  *Id.*  The circumstances of both acts must be sufficiently similar to support a finding that the same person was probably involved in both.  *Id.*; *see also People v. Ornelas*, 937 P.2d 867, 872 (Colo. App. 1996).  In addition,
>
> > [b]efore admitting such evidence, the trial court, on the basis of all the evidence before it, must be satisfied by a preponderance of the evidence that the other crime occurred and that the [witness] committed the crime.  The Court then must consider whether the other-crime evidence is being offered for a proper purpose and is logically relevant to a material issue in the case, whether the logical relevancy of the evidence is independent of the intermediate interference of the [witness's] bad character,

and whether the probative value of the other-
crime evidence is substantially outweighed by
the danger of unfair prejudice

. . . .

*People v. Garner*, 806 P.2d 366, 373-74 (Colo. 1991).

Here, in his notice regarding "other acts" evidence,
defendant notified the court and prosecution that he intended
to introduce evidence that on one occasion the boyfriend
had assaulted the victim and on another had broken the
victim's ankle during an altercation.  At trial, defendant
argued to the court that these incidents would establish the
identity of the boyfriend as the perpetrator of the stabbing in
this case.

As to the first incident, the trial court found that
defendant did not show by a preponderance of the evidence
what occurred.  The alleged eyewitness was not made
available to testify as to what he saw, and defendant
acknowledged in his notice that the victim had refused to
cooperate with the police.  In addition, the boyfriend's
identity and presence the night the victim was killed was
undisputed.

Regarding the second incident, the court noted that
the offer of proof was "vague" and that it was in part based
on hearsay.  In addition, the court decided that this incident
had a propensity for character evidence making it
"inappropriate" to admit.

Finally, we reject defendant's argument that the
boyfriend "opened the door" to testimony under CRE 404(b),
of an alternate suspect theory of defense, or for
impeachment.

Defendant's argument is premised on the boyfriend's
response on direct examination to the question whether he
remembered the investigators' asking whether he hurt the
victim that night.  The boyfriend answered: "Yeah, they
asked me, and I told them I would never hurt her."
Defendant sought to introduce CRE 404(b) evidence, but the
court denied the request, ruling the door was not opened
based on the boyfriend's single statement.  We agree with
the trial court's ruling.

30

> The boyfriend's statement was in response to the question whether he remembered the investigators' asking whether he hurt the victim that night.  In addition, defendant has not demonstrated prejudice.  The victim's father testified that the boyfriend and the victim had argued and hit each other the night she was stabbed.  The victim's sister stated she did not see the boyfriend hit the victim, but heard a "smack."  Another man punched the boyfriend, and that man and defendant beat the boyfriend.  That man testified he saw defendant grab a knife and straddle the victim and she defendant's arm go down.  Thus, there was already evidence that the boyfriend hit the victim, and there was no evidence that he stabbed the victim.
>
> Thus, the court did not abuse its discretion in excluding evidence that the boyfriend had injured the victim on two occasions.

ECF No. 6, ex. D at 10-13.

For the state court rulings limiting admissibility of the other-crime evidence and impeachment of Paul Vigil to rise to the level of a constitutional violation, the rulings must have precluded evidence so critical to Mr. Vigil's defense that the omission denied him fundamental fairness.  *See Ellis*, 326 F.3d at 1128; *Brinlee*, 608 F.2d at 850.  The Colorado Court of Appeals made clear that is not the case here.  The information defense counsel sought to introduce was not critical to Applicant's defense.  Although the state appellate opinion did not cite to or base its conclusion on federal constitutional law, the decision must be viewed with deference.  *See Harrington*, 131 S. Ct. at 784, *Early*, 537 U.S. at 8; *Aycox*, 196 F.3d at 1177-78.  The state appellate court's decision was not contrary to federal constitutional law.  Claims ten, eleven, and twelve are without merit.

### Claim Thirteen

In his thirteenth and final claim, Mr. Vigil contends "was denied his right to a fair

trial because of . . . numerous irregularities," i.e., the prosecutor showed the jury a photograph of his tattoo, which the trial court had ruled could be used only for identification purposes, and witness Jessie Hurtado testified that she had taken a lie detector test.  ECF No. 1 at 16.

As to the first alleged irregularity, during opening statement, the prosecutor discussed the injuries Mr. Vigil had received during his fight with Monica Gutierrez. Pointing to a photograph of Mr. Vigil, the prosecutor said, "A scratch to the back.  This scratch right here.  Scratches to his chest, next to the tattoo that reads L'il Stomper."  R. vol. XI, 20, Feb. 18, 2004.

After the prosecutor concluded his opening statement, defense counsel requested a mistrial on the basis that the trial court previously had ordered that evidence of the tattoo could be used only for identification purposes.  *Id.* at 42, 44-46. Following a discussion outside the presence of the jury, the trial court considered the applicable standards, and found that the prosecutor's reference to the tattoo was not made "in bad faith" and that "under the circumstances here that by generally instructing the jury that opening statements are not evidence that any prejudice can be cured."  *Id.* at 53.

The second alleged irregularity occurred during Jessica Hurtado's direct examination, when the prosecutor asked her a series of questions about her initial statements to police.  The prosecutor then asked her, "And did you then describe what happened inside there, including the assault on both Paul and your sister?"  R. vol. XIII, 287, Feb. 20, 2004.  Jessica Hurtado replied, "I didn't mention anything, I think, about my sister until after they gave me the lie detector test.  I think that's when I finally . . . ."

*Id.*

Defense counsel objected and moved to strike the answer and, outside the presence of the jury, moved for a mistrial on the basis that Jessica Hurtado's mention of the polygraph test violated a pretrial order.  The trial court denied the motion for mistrial, granted the motion to strike, and instructed the jury to disregard the last statement made by the witness.  *Id.* at 288.

This federal habeas court does not review the state court's rulings of state evidentiary law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  This is because "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights."  *Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005).  Absent a showing that the admission of evidence violated a specific constitutional right, a federal habeas court will not disturb the state court's evidentiary rulings unless the admission of the evidence was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal quotation marks omitted); *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).  Cumulative error looks at alleged errors of constitutional dimension found to be harmless, and aggregates them to assess whether they so permeated the trial as to deny fundamental fairness.  *See Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).  The cumulative-error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.  *Id.*  Even if the admission of the evidence was

of constitutional magnitude, Mr. Vigil cannot prevail in this habeas proceeding unless he

shows that the evidence had a substantial and injurious influence on the jury's verdict.

*See Brecht*, 507 U.S. at 637.

The Colorado Court of Appeals, addressing Mr. Vigil's claim thirteen as one of

cumulative error, disagreed that his right to a fair trial was denied because of trial

irregularities as follows:

> Defendant relies on two "violations," other than those addressed above, which he contends combine to require reversal. Defendant claims the prosecution's showing of a picture of defendant with a tattoo violated the trial court's order that the prosecution could not use evidence of tattoos for identification purposes. However, in lieu of a mistrial, the trial court stated that offering a curative instruction would cure any prejudice. We agree with the trial court. *See, e.g.*, *People v. Lehmkuhl*, 117 P.3d 98, 104 (Colo. App. 2004) (expert testimony in violation of motion in limine not basis for mistrial in light of curative instruction by trial court).

> In addition, defendant claims the court's allowing the victim's sister to mention her polygraph test was error. We perceive no reversible error. The sister, in response to the prosecutor's questioning regarding when she told the police about what happened that night, stated, "I didn't mention anything . . . until after they gave me the lie detector test." Defendant objected, moved to strike, and moved for a mistrial. The trial court denied the motion for mistrial, but instructed the jurors to disregard the sister's statement. The prosecutor did not refer to the test in any way. Thus, the court did not abuse its discretion in denying the motion for mistrial. *See People v. Preciado-Flores*, 66 P.3d 155, 163 (Colo. App. 2002) (brief, isolated reference to polygraph test did not rise to level of prejudice necessary to declare mistrial).

> Even if we assume these were errors, they did not substantially prejudice defendant's right to a fair trial. Therefore, defendant is not entitled to reversal on this theory. *See People v. Roy*, 723 P.2d 1345, 1349 (Colo. 1986); *People v. Rivers*, 727 P.2d 394, 401 (Colo. App.

1986).

ECF No. 6, ex. D at 14-15.

Mr. Vigil concedes each alleged error was harmless in and of itself.  ECF No. 1 at

16.   Any prejudicial effect was mitigated, in part, by the trial court's curative instructions

to the jury to disregard the tattoo reference and lie-detector comment.  Any lingering

prejudicial effect was diminished by the presumption, absent a showing to the contrary,

that the jury complied with the trial court's instructions.

A reviewing court "presume[s] that the jurors conscientiously observed the

instructions and admonitions of the court.  Speculation that this was not done cannot be

employed in assailing the jury's verdict, in the absence of a showing of facts proving

otherwise."  *United States v. Morris*, 623 F.2d 145, 148 (10th Cir. 1980) (citing *United*

*States v. Cooper*, 464 F.2d 648 (10th Cir. 1972)); *see also Weeks v. Angelone*, 528

U.S. 225, 234 (2000) (finding that jurors are presumed to follow the instructions given);

*Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel

generally carry less weight with a jury than do instructions from the court").  Mr. Vigil has

failed to present any facts demonstrating that the jury disregarded the instructions of the

trial court.

Viewed in context, the alleged errors were insufficient to undermine the

fundamental fairness of the trial.  *See Fox*, 200 F.3d at 1296.  Mr. Vigil has not

demonstrated that the reference and comment constitute cumulative error sufficient to

warrant vacating his convictions.  Although the Colorado Court of Appeals' opinion did

not cite to or base its conclusion on federal constitutional law, the decision must be

viewed with deference.  *See Harrington*, 131 S. Ct. at 784, *Early*, 537 U.S. at 8; *Aycox*,

196 F.3d at 1177-78.  Given this level of deference, this Court does not find that the state appeals court's evaluation of the cumulative impact of the alleged trial court errors was contrary to or an unreasonable application of clearly established federal law. Claim thirteen is meritless.

### III.  Conclusion

For the reasons stated above, habeas corpus relief will be denied.

Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Vigil files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the habeas corpus application is denied, and the action is dismissed with prejudice.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant, Joshua J. Vigil, has not made a substantial showing of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is DENIED.

Dated this 10th day of May, 2012.

BY THE COURT:

William J. Martínez
United States District Judge